**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**ALMA P.,[1]**

**Plaintiff,**

**v.**

**Case No. 2:25-cv-18121**
**Magistrate Judge Cheryl L. Pollak**

**FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,**

**Defendant.**

**OPINION AND ORDER**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Alma P. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying Plaintiff's application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for further proceedings.

## I. PROCEDURAL HISTORY

On March 1, 2023, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging that she had been disabled since an alleged

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.

onset date of April 30, 2022. R. 43, 48, 146–52. Plaintiff's application was denied initially on September 20, 2023, and upon reconsideration on April 11, 2024. R. 60–64, 67–70. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 71–73. ALJ Kenneth Ayers held a telephonic hearing on November 18, 2024, at which Plaintiff, who was represented by counsel, John J. Rachinsky, and vocational expert, Mary Vasishth, testified. R. 23–42.

In a decision dated December 30, 2024, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 30, 2022, the alleged onset date, through the date of the decision. R. 10–18. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on October 2, 2025. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 23, 2026, Plaintiff consented to disposition of the matter by a United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 13.[2] On June 25, 2026, the case was reassigned to the undersigned. ECF No. 14. The matter is now ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has

[2]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see*, *e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.");

*see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although the ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short

paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp. 3d at 518. In assessing whether the record is fully developed to support an award of benefits, courts take a more liberal approach when the claimant has already faced long processing delays. *See*, *e.g.*, *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000). An award is "especially appropriate when "further administrative proceedings would simply prolong

[Plaintiff's] waiting and delay his ultimate receipt of benefits." *Podedworny*, 745 F.2d at 223; *see Schonewolf*, 972 F. Supp. at 290.

**B. Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III. ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 60 years old on the alleged disability onset date. R. 15. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2028. R. 12. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since April 30, 2022, her alleged onset date. R. 13.[3]

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: spine disorder; left knee internal derangement; bilateral hand osteoarthritis, with bilateral carpal tunnel syndrome; and obesity. *Id.* The ALJ also found that the Plaintiff had non-severe impairments, including "right medial epicondylitis. . .[and] right knee impairment," that had not

[3] The ALJ noted that Plaintiff had worked after the alleged onset date but that this work did not rise to the level of substantial gainful activity. R. 13. He also noted that she had some limited earnings in 2023 and that her earnings in 2022 were less than half of the earnings in 2021, consistent with her stopping work around the alleged date of onset. *Id.*

caused more than minimal limitation in her ability to perform basic work activities for 12 consecutive months relevant to the decision. *Id.* (citing Ex. 8F at 2, 4 and 9F at 1-2).

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–14.

At step four, the ALJ found that Plaintiff had the RFC to perform "light work," subject to various non-exertional limitations. R. 14–18. The ALJ also found that the Plaintiff was able to perform her past relevant work as a clerk typist.[4] R. 17–18. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from April 30, 2022, her alleged onset date, through the date of that decision. R. 18.

Plaintiff disagrees with the ALJ's findings at step four and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief*, ECF No. 9 ("*Pl. Br.*"); *Plaintiff's Reply Brief*, ECF No. 12 ("*Pl. Reply*"). Specifically, Plaintiff contends that the ALJ erred because the RFC finding fails to reasonably describe the "total limiting effects" of Plaintiff's hand impairments as demonstrated by the record. *Pl. Br.* at 8.

The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 11 ("*D. Br.*").

## IV. SUMMARY OF ALJ FINDINGS, HEARING TESTIMONY, AND RELEVANT MEDICAL EVIDENCE

In his decision, at step three, the ALJ found that the most relevant listings implicated by Plaintiff's impairments were listings "1.15 (Disorders of the skeletal spine resulting in

---

[4] The ALJ did not make any alternative findings at step five.

compromise of a nerve root); 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equine); and 1.18 (Abnormality of a major joint(s) in any extremity)." R. 13. He also considered Social Security 19-2p, noting that although there was no listing for obesity, it "may be a factor in both 'meets' and 'equals' determinations." R. 13-14. Based on his review of the record, the ALJ found that Plaintiff's impairments, considered singly and in combination, failed to meet or equal any of the listings.

Plaintiff does not challenge the ALJ's findings in this regard. Her challenge is based on the ALJ's RFC determination. In his decision, the ALJ noted that Plaintiff testified that she was formerly a judicial clerk, who has carpal tunnel syndrome and is no longer working. R. 15. He noted that she testified that she has "difficulty using her hands to wash dishes," "does not use a computer at home," and that "her arms hurt when doing laundry." *Id.* He noted that she also testified that she had other symptoms related to her shoulder and knees, causing her difficulty in lifting, walking, sitting for 15 to 20 minutes until she has pain. *Id.* She further testified that she no longer drives; her family members help with chores; but "[o]n a typical day, she gets up with her husband and has coffee," and "can prepare a sandwich for lunch." *Id.*

Based on her medically determinable impairments, the ALJ found that the record was inconsistent with her claims about the intensity, persistence and limiting effects, noting that the limitations were reflected in his RFC finding. R. 15. The ALJ proceeded to review Plaintiff's history of pain in the lumbar spine, and cervical spine, as well as her right shoulder and knees, including the results of examinations and prescribed treatments. R. 15-16. He also considered the record evidence relating to Plaintiff's obesity and based on "the objective medical evidence of record regarding the claimant's impairments," found that Plaintiff "is limited to light work, subject to the additional limitations specified in the [RFC]." R. 17.

At step four, the ALJ stated that Plaintiff's past relevant work as a clerk typist was "generally performed at the sedentary level of exertion, actually performed by the claimant at the light or perhaps medium level of exertion, and carrying an SVP of 4, making the work semi-skilled." R. 17. The ALJ cited the testimony of the vocational expert at the hearing based on a hypothetical for an individual who possessed an RFC as outlined in the decision:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: The claimant can handle and finger frequently, bilaterally. The claimant can occasionally climb ramps and stairs, never climb ladders, ropes or scaffolds, can occasionally balance as defined in the SCO, and can occasionally stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights or around hazardous moving mechanical parts and can occasionally work in extreme cold.

R. 14, 17.

When asked whether a hypothetical individual with this RFC could perform Plaintiff's past work, the vocational expert answered that they would "as generally performed." R. 17, 38–39. The expert further testified that "even if the residual functional capacity were reduced to the light exertional level, that the claimant could still perform this past relevant work as generally performed." *Id.* The ALJ found the expert's response to be "largely consistent" with the Dictionary of Occupational Titles. R. 18

## V. DISCUSSION

Plaintiff challenges the ALJ's determination on the grounds that the ALJ fails to reasonably describe and account for the limiting effects of Plaintiff's hand impairments in the RFC, and failed to connect his RFC finding to the record. *Pl. Br.* at 8, 13; *Pl. Reply* at 4–5.

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). At the administrative hearing stage, it is the ALJ who is charged with determining the claimant's RFC. 20 C.F.R. § 404.1546(c); *see also Chandler v. Comm'r of Soc.*

*Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In addition, an ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[5] the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The applicable regulation emphasizes that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulation provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(1). As to the consistency factor, the regulation provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

[5] As previously noted, Plaintiff's claim was filed on March 1, 2023.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. at § 404.1520c(c)(2).

"Subjective allegations of pain or other symptoms cannot alone establish a disability." *Miller v. Comm'r of Soc. Sec*., 719 F. App'x 130, 134 (3d Cir. 2017) (citing 20 C.F.R. § 416.929(a)). Instead, objective medical evidence must corroborate a claimant's subjective complaints. *Prokopick v. Comm'r of Soc. Sec*., 272 F. App'x 196, 199 (3d Cir. 2008) (citing 20 C.F.R. § 404.1529(a)). Specifically, an ALJ must follow a two-step process in evaluating a claimant's subjective complaints. SSR 16-3p, 2016 WL 1119029 (March 16, 2016). First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id*. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id*.; *see also Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) ("[Evaluation of the intensity and persistence of the pain or symptom and the extent to which it affects the ability to work] obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it.") (citing 20 C.F.R. § 404.1529(c)).

In conducting this evaluation, an ALJ must consider the objective medical evidence as well as other evidence relevant to a claimant's subjective symptoms. 20 C.F.R. § 404.1529(c)(3) (listing the following factors to consider: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate pain or other

symptoms; treatment, other than medication, currently received or have received for relief of pain or other symptoms; any measures currently used or have used to relieve pain or other symptoms; and other factors concerning your functional limitations and restrictions due to pain or other symptoms). Finally, an "ALJ has wide discretion to weigh the claimant's subjective complaints, *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983), and may discount them where they are unsupported by other relevant objective evidence." *Miller*, 719 F. App'x at 134 (citing 20 C.F.R. § 416.929(c)); *see also Izzo v. Comm'r of Soc. Sec.,* 186 F. App'x 280, 286 (3d Cir. 2006) ("[A] reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

"Findings of fact by the [Commissioner] must be accepted as conclusive by a reviewing court if supported by substantial evidence." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). Substantial evidence has been defined as "such relevant evidence as a reasoning mind might accept as adequate to support a conclusion." *Id.* (citing *Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980); 42 U.S.C. § 405(g)). The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests," sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec*., 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was

not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).[6]

Plaintiff contends that in finding Plaintiff able to "handle and finger frequently" instead of only occasionally, the ALJ ignored Plaintiff's testimony that described greater limitations. *Pl. Br.* at 8. Plaintiff cites 20 C.F.R. § 404.1529(c)(4) to argue that the ALJ is required to evaluate the claimant's statements as to the intensity, persistence, and limiting effects of a claimant's symptoms "'*in relation to the objective medical evidence and other evidence* . . .in reaching a conclusion as to whether you are disabled.'" *Pl. Br.* at 10 (quoting (20 C.F.R. § 404.1529(c)(4)) (emphasis added). Plaintiff notes that in following the two-step process in evaluating Plaintiff's limitations, the ALJ found in Plaintiff's favor, *Pl. Br.* at 11, finding that among the severe impairments suffered by Plaintiff, she suffered from "bilateral hand osteoarthritis, with bilateral carpal tunnel syndrome," and that the objective evidence demonstrated impairments that could reasonably be expected to cause the type of symptoms and limitations described by Plaintiff. R. 13, 15. Plaintiff contends that: "*Once this first step of the analysis is resolved in the claimant's favor, subjective symptoms alone can support work-preclusive limitations* – 'because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical

---

[6] The Commissioner is required to consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, with "the most important factors" being supportability and consistency. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). *See Gongon v. Kijakazi*, 676 F. Supp. 3d 383, 394 (E.D. Pa. 2023) (citations omitted) (holding that while "[s]upportability and consistency are the most important factors. . . . ALJs need not explain their determinations regarding the other factors, but they must discuss supportability and consistency."); *see also Stamm v. Kijakazi*, 577 F. Supp. 3d 358, 370 (M.D. Pa. 2021).

evidence alone.'" *Pl. Br.* at 11 (quoting 20 C.F.R. § 404.1529(c)(2)-(3)) (emphasis added by Plaintiff).

Although the ALJ stated that Plaintiff's statements regarding the intensity, persistence and limiting effects of her symptoms were "not entirely consistent" with the record "for the reasons explained in this decision," R. 15, nowhere in his determination does he connect this finding with respect to Plaintiff's carpal tunnel syndrome to evidence in the underlying medical records. Instead, in his RFC finding, the ALJ briefly summarizes the record, without reference to her hand limitations, and states in summary fashion: "Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by the evidence of record." R. 17.

It is well established that an ALJ "'cannot reject evidence for no reason or for the wrong reason.'" *Masher v. Astrue*, 354 Fed. Appx. 623, 627 (3d Cir. 2009) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). Evidence is not substantial if "'it really constitutes not evidence but mere conclusion.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 927 (3d Cir. 2019) (quoting *Kent*, 710 F.2d at 114)). Importantly, "as part of the ALJ's duty of articulation, the ALJ must establish a logical bridge between the evidence and the ALJ's legal conclusions and factual findings." *Bienkowski v. Bisignano*, No. 4:24-CV-1714, 2025 WL 1668328, at *7 (M.D. Pa. June 12, 2025).

The court in *Koshir v. Kijakazi*, No. CV 20-1441, 2022 WL 992529, at *4–6 (W.D. Pa. Mar. 31, 2022), illustrates the importance of this duty of articulation. In that case, the RFC "was actually quite extensive and specific." *Id.* at *4. The ALJ "discussed the evidence generally in explaining how she determined the RFC," but "at no point did she expressly indicate how she came to her specific determinations as to Plaintiff's functional limitations." *Id.* at *4; *see also id.*

at *3 (crafting a RFC for medium exertional work with multiple additional limitations, including, *inter alia*, "frequent handling and fingering with both hands"). The ALJ essentially "summarized the record evidence and then concluded, without any real explanation, that this evidence supported the RFC she crafted." *Id*. The *Koshir* court found that it "is unable, simply by reviewing the ALJ's discussion of the evidence, to determine how that evidence translated into the very specific RFC findings made by the ALJ." *Id*. at *5. The court specifically found that, as it related to the RFC limitation of frequent bilateral handling and fingering, the vocational expert testified that if the claimant "was limited to only *occasional* bilateral handling and fingering, he could not perform his past relevant work." *Id*. (record citations omitted) (emphasis added). The court concluded that, because it "cannot determine the basis for the ALJ's finding limiting Plaintiff specifically to frequent fingering and handling, rather than to occasional, this distinction is potentially very relevant. The ALJ must more fully explain why the evidence supports her findings in this regard." *Id*.; *see also id*. at *6 (stating that the court is "unable to review the ALJ's findings" where the ALJ does not build a logical bridge between the evidence and the ALJ's findings) (citations omitted).

Similarly, here, the ALJ's summary of the record does not satisfy his burden of articulation or sufficiently explain his basis for discounting Plaintiff's statements about her carpal tunnel symptoms; indeed, the ALJ's summary of the evidence barely reflects any mention of the medical findings with respect to Plaintiff's carpal tunnel syndrome diagnosis. R. 14–17. The ALJ noted Plaintiff testified at the hearing that she has, *inter alia*, carpal tunnel syndrome and that she has difficulty using her hands to wash dishes, does not use a computer at home, that her arms hurt when doing laundry, and can prepare a sandwich for lunch, but that her family members help with chores. R. 15. However, the ALJ failed to mention Plaintiff's testimony that,

as a clerk typist, she spent six hours out of an eight-hour day, five days a week, typing and doing data entry, and that she had to leave her job because she "couldn't do it anymore. . . . It was painful," because her "fingers [were] numb, sting, and they curled up, and they lock up." R. 29-30. The ALJ's RFC, without any explanation, nevertheless found her capable of "handl[ing] and finger[ing] frequently, bilaterally[.]" R. 17.

The ALJ also referenced three physical examinations that addressed Plaintiff's carpal tunnel syndrome, but did not clarify why the ALJ found that Plaintiff could frequently—as opposed to occasionally—handle and finger, bilaterally. R. 16.[7] The ALJ noted that in March 2023, at a time when Plaintiff was no longer working, she reported "some relief" from using Voltaren gel and wearing wrist braces, and "good relief" from Extra Strength Tylenol. *Id*. (citing Ex. 8F at 1; R. 459). However, the ALJ also noted that in April 2024, Plaintiff reported, *inter alia*, numbness and tingling in her arms, and she was diagnosed with carpal tunnel syndrome, *id.* (citing Ex. 8F at 17–18; R. 475–76), and that in July 2024, Plaintiff reported that her pain was worse with wrist flexion and pronation and, upon examination, there was tenderness and pain, *id*. (citing Ex. 9F at 1; R. 496).

---

[7] A review of the medical records indicates numerous references to Plaintiff's bilateral carpal tunnel syndrome. *See, e.g.*, R.194 –95 (referring to evaluation/treatment of her carpal tunnel syndrome from Florida Pain Medicine in 2023 and 2024, which included x-rays of bilateral hands, neck, and back); R. 253–5 (EMG Summary/Interpretation: "Findings compatible with bilateral carpal tunnel syndrome. . .); R. 262 (containing "EMG - Nerve Conduction Report"); R. 477 (record dated January 20, 2023, noting "numbness and tingling in both hands and related to all fingers. . . .She recently retired from clerical work and was typing all day. I will have her start wearing bilateral wrist braces with rigid core at night, and trial [V]oltaren gel"); R. 477 (record dated March 30, 2023, reporting "the wrist pain is improving"); R. 476 (record dated April 3, 2024, noting, *inter alia*, that Plaintiff "is currently taking ES Tylenol and applying [V]oltaren gel to the hands and knees with *poor analgesia*. . . .  . I have provided the patient with a referral for nerve conduction study and EMG of the bilateral upper extremities to evaluate for cervical radiculopathy versus peripheral neuropathy") (emphasis added). Records from Florida Pain Medicine in March 2023, also reflect positive Phalen's test, bilaterally, and positive Tinel test, bilaterally. R. 460 (Ex. 8F at 2).

Nowhere in this recitation—or at any point in his decision—does the ALJ explain why he rejected Plaintiff's complaints of arm/hand/finger pain and her assessment of the job requirements that required six hours of typing and data entry per day. R. 10–18.

The ALJ's failure to provide any basis in support of his finding that Plaintiff could do frequent fingering and handling required by her past relevant work, and for discounting Plaintiff's description of her job requirements and the extent of her pain, leaves the Court unable to determine what led the ALJ to this determination. *Messina v. Comm'r of Soc. Sec.*, 844 F. App'x 586, 589–90 (3d Cir. 2021) ("Yet we cannot reweigh the evidence or make our own factual determinations.") (citations omitted); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to reweigh the evidence or impose their own factual determinations [under the substantial evidence standard]." Despite acknowledging that her bilateral carpal tunnel syndrome was a "severe" impairment, that had "resulting limitations, which are reflected in the [RFC]," the ALJ failed to explain how he crafted Plaintiff's frequent (as opposed to occasional) hand-related limitations in the RFC. R. 13–17. The ALJ's decision therefore failed to provide a "logical bridge" between the evidence and his decision. *See Bienkowski*, 2025 WL 1668328, at *7; *Glenda M. v. Comm'r Soc. Sec.*, Civ. No. 22-03137, 2023 WL 6387515, at *6 (D.N.J. Sep. 29, 2023) ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and [his] conclusions.") (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

As in *Koshir*, the ALJ's failure to explain the RFC limitation of frequent (instead of occasional) bilateral handling and fingering was not harmless error when viewed in light of the testimony of the vocational expert. *See Koshir*, 2022 WL 992529, at *4–6. When presented with the RFC proposed by the ALJ, the vocational expert asked the ALJ to confirm that the RFC

involved "handle and finger frequently." R. 38 ("So you said handle and finger was frequently?"). When the ALJ reiterated that Plaintiff could handle and finger frequently, the vocational expert testified: "Yes, given this hypothetical, past work could be done." *Id.* However, when asked if the past work would remain if handling and fingering bilaterally was reduced to "occasionally," the expert testified: "No, Your Honor; there's frequent fingering and handling," referring to Plaintiff's past work as Clerk typist. R. 39. More critically, the vocational expert testified that with occasional fingering and handling, there would not be any transferrable jobs in the national economy: "No, Your Honor; as the title would suggest, it's keyboarding on a . . .it's a lot of data input, so any transferability would require that as the focus, and if you . . .do that, then it would need more than occasional handling o[r] fingering." R. 39. As the Third Circuit noted in *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987), a "hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise, the question is deficient and the expert's answer to it cannot be considered substantial evidence." (citation omitted). In the absence of any explanation as to why the ALJ rejected Plaintiff's subjective complaints of pain and inability to engage in her past work as primarily a typist/data input clerk and why he crafted a RFC for frequent (instead of occasional) bilateral handling and fingering, this Court is unable to conclude that substantial evidence supports the RFC determination. In the absence of any explanation as to how he reached the RFC limitation for frequent handling and fingering—a restriction determinative as to whether she can perform her past relevant work, and, ultimately, whether she is disabled— the Court finds it necessary to reverse and remand the matter for further consideration. *See Koshir*, 2022 WL 992529, at *4–6.

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: September 1, 2026

*s/Cheryl L. Pollak*
CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE